**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:06cv159-V-02
(5:94cr19-V)**

| | |
|---|---|
| **GREGORY ROLAND PRUESS,** )<br>    **Petitioner,** )<br>  )<br>    **v.** )<br>  )<br> **UNITED STATES OF AMERICA,** )<br>    **Respondent,** )<br>_____) | **O R D E R** |

**THIS MATTER** comes before the Court on Petitioner's "Petition For Writ Of Error <u>Coram Nobis</u>" pursuant to 28 U.S.C. § 1651, filed December 18, 2006 (Doc. No. 1); the Government's Response, filed January 17, 2007 (Doc. No. 3); Petitioner's Reply, filed February 14, 2007 (Doc. No. 5); the Government's Final Response, filed February 21, 2007 (Doc. No. 7); and Petitioner's Reply to the Government's Final Response, filed March 18, 2007 (Doc. No. 10). Upon careful consideration, for the reasons stated herein, Petitioner's <u>Coram Nobis</u> Petition (Doc. No. 1) will be <u>dismissed</u>.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner has a protracted history with this Court going back to a time after he had been in military service. A gun collector, he operated a museum of military artifacts. He possessed a Federal Firearms License. The instant Petition is an attack on the first of several prosecutions which Petitioner sustained for firearms-related offenses. By the instant Peti-

tion, Petitioner asks the Court to revisit his prosecution in the case of United States v. Pruess, 5:94cr19-V ("Pruess I," hereafter), and to strike his 1995 guilty plea in that case and his resulting conviction for transferring a 60 mm mortar round in violation of 26 U.S.C. § 5861(e).

Pertinent Court documents show that in or about December 1992, special agents from the Bureau of Alcohol, Tobacco and Firearms ("BATF" hereafter) began an investigation of Petitioner on the basis of reports that he possessed unregistered machine guns, silencers and destructive devices. (Pruess I, Doc. No. 1). During the course of that investigation, BATF agents secured the cooperation of one of Petitioner's associates. (Id.). That associate told the agents that he and Petitioner planned to trade between themselves certain articles of weaponry. (Id.). To that end, on June 28, 1994, Petitioner gave the associate three 40 millimeter M406 grenade cartridges and a 60 mm mortar round in exchange for an inert LAW Rocket which had been provided to the associate by the agents. (Id.). The investigation further revealed that the items that Petitioner traded were not registered to him. (Id.).

On August 1, 1994, a grand jury charged Petitioner with 12 separate violations of federal law, including a charge in Count Eight that he knowingly and unlawfully transferred the 60 mm

mortar round, in violation of 26 U.S.C. § 5861(e).[1]  (Id., Doc.

No. 3).  On February 21, 1995, the parties filed a Plea Agreement

wherein Petitioner agreed to plead guilty to Count Eight in

exchange for the Government's promise to dismiss the remaining

eleven charges.[2] (Id., Doc. No. 18).  Also on that date, Peti-

tioner appeared before the Court and entered his guilty plea.

After considering Petitioner's answers to all of its questions,

the Court determined that the guilty plea was properly made, and

it accepted the plea.

On February 20, 1996, the Court held a Factual Basis and

Sentencing Hearing.  Upon granting the Government's oral motion

for a Downward Departure under U.S. Sentencing Guidelines §

---

[1] The National Firearms Act, 26 U.S.C. §5845, et seq. makes it unlawful
for any person to transfer a firearm that has not been registered in the
National Firearms Registration and Transfer Record.  Under the Act, a
"firearm" is defined as, among other things, a "destructive device."  26
U.S.C. §5845(a)(8).  Subsection (f) of the Act further defines a "destructive
device" as:
> **(1)** any explosive, incendiary, or poison gas (A) bomb,
> (B) grenade, (C) rocket having a propellant charge of
> more than four ounces, (D) missile having an explosive
> or incendiary charge of more than one-quarter ounce,
> (E) mine, or (F) similar device; **(2)** any type of
> weapon by whatever name known which will, or which may
> be readily converted to, expel a projectile by the
> action of an explosive or other propellant.

[2] Counts One through Three charged Petitioner with unlawfully possessing
three 40 mm grenades and Count Four charged him with unlawfully possessing the
60 mm mortar round, all in violation of 26 U.S.C. § 5861(d).  Counts Five
through Seven charged him with unlawfully transferring the three 40 mm gre-
nades, in violation of 26 U.S.C. § 5861 (e).  Counts Nine through Twelve
charged him with unlawfully possessing the three grenades and the 60 mm mortar
round with obliterated identification information, in violation of 26 U.S.C. §
5861(h).

5K1.1, the Court sentenced Petitioner to a term of 12 months and one day imprisonment. (Id., Doc. No. 30).  Petitioner did not directly appeal his conviction or sentence, nor did he timely seek collateral review.

After Petitioner was released from prison but before his term of supervised release was completed, federal authorities executed a search warrant on his home and on two of his storage units on October 17, 1997.  (Case No. 5:97cr300-V, Doc. No. 3, "Pruess II," hereafter).  That search revealed hundreds of guns, explosives and other military equipment, all of which were seized.  (Id.).  On November 3, 1997, Petitioner was indicted for twenty-five violations of federal law arising from those search-es.  (Pruess II, Doc. No. 10).

On March 3, 1999, Petitioner entered "straight-up" guilty pleas to 19 of the charges.[3]  (Id., Doc. No. 64).  As a result, on June 4, 1999, the U.S. Probation Office filed a Motion for revocation of Petitioner's supervised release in Pruess I. (Pruess I, Doc. No. 32).

However, while his Pruess II charges were still pending, another Indictment was filed on August 4, 1999, charging

---

[3]Although Petitioner initially pled guilty to Counts One through Five, Eight and Nine, Eleven through Nineteen, Twenty-One, Twenty-Four and Twenty-Five, he subsequently was permitted to withdraw his guilty pleas to Counts Eighteen and Nineteen, which charges ultimately were dismissed.  (Pruess II, Doc. No. 82).

4

Petitioner with violating 18 U.S.C. §§ 922(g) and 3147 for the offenses of using a falsified Federal Firearms License to order a firearm over the Internet. (Case No. 5:99cr48, Doc. No. 2, "Pruess III," hereafter). On November 8, 1999, Petitioner entered "straight-up" guilty pleas to both charges in Pruess III. (Transcript of Plea Hearing, filed July 11, 2000).

On December 16, 1999, the Court turned its attention back to Pruess II when it held a Factual Basis and Sentencing Hearing for that case. At the conclusion of the proceeding, the Court sentenced Petitioner to 108 months' imprisonment.[4]

On September 22, 2000, the Court held a combined Factual Basis and Sentencing/Supervised Release Violation Hearing in Pruess III and Pruess I, respectively. As to Pruess III, the Court sentenced Petitioner to four months imprisonment for his violation of 18 U.S.C. § 3147, and to a consecutive four-month term for his violation of 18 U.S.C. § 922(g).[5] (Pruess III, Doc.

---

[4] Petitioner unsuccessfully appealed certain of his convictions and sentences from Pruess II. United States v. Pruess, 2 F. App'x 262 (4th Cir. Jan. 19, 2001) (unpublished). Petitioner also timely filed a § 2255 Motion in Pruess II. Pruess v. United States, Case Number 5:01cv59-2-V. However, the Court denied that Motion on March 2, 2004. (Id., Doc. No. 14).

[5] Petitioner unsuccessfully appealed his convictions and sentences in Pruess III. United States v. Pruess, 13 F. App'x 87 (4th Cir. June 19, 2001) (unpublished). Petitioner also timely filed a § 2255 Motion in Pruess III. Pruess v. United States, Case Number 5:01cv149-1-V. However, the Court denied that Motion on March 3, 2004. (Id., Doc. No. 9). Petitioner's appeal of that decision also was rejected by the Circuit Court. United States v. Pruess, 120 F. App'x 498 (Feb. 4, 2005) (unpublished).

No. 23).  Petitioner's sentences were imposed consecutively to the 108-month term imposed in Pruess II.  (Id.).

As to the allegation concerning the term of supervised release, the Court concluded that Petitioner, in fact, violated the conditions of his release.  (Pruess I, Doc. No. 37).  Therefore, the Court sentenced Petitioner to an additional 12-month concurrent term for that violation.  (Id.).

In the midst of Petitioner's prosecutions in Pruess II and III, on June 7, 1999, he filed a Petition for a Writ of Habeas Corpus under § 2241, challenging his conviction in Pruess I. (Case No. 5:99cv79-V, Doc. No. 1).  That Petition raised several arguments, the crux of which was that Petitioner actually is innocent of his conviction.  He argued that the 60 mm mortar round was not a destructive device as defined by 26 U.S.C. § 5861 and, therefore, the Government lacked jurisdiction to prosecute him for the subject offense. (Id., Doc. No. 1).  However, the Court determined that Petitioner was not entitled to any relief, in part, because he could have raised his arguments in a timely filed motion to vacate under § 2255 and because, in any event, he had failed to establish his actual innocence to all of the remaining charges in the Pruess I Indictment. (Id., Doc. No. 2).[6]

---

[6] The Court's dismissal of Petitioner's § 2241 Petition ultimately was affirmed on appeal.  United States v. Pruess, 48 F. App'x 869 (4th Cir. Oct. 8, 2002) (unpublished).

Also during that time frame, Petitioner began filing numerous Motions for Return of Property, including one on March 30, 1999 (Pruess II, Doc. No. 91), and one on May 19, 2000 (Pruess III, Doc. No. 17). After giving the parties several opportunities to resolve those motions, on March 24, 2004, the Court held a hearing on those matters. During that hearing, Special Agent Richard Campbell of the BATF ("Agent Campbell," hereafter) testified as an expert for the Government. (Pruess II, Doc. No. 171). Subsequent to that hearing, the Court determined, <u>inter alia</u>, that a portion of the seized items was properly subject to forfeiture and that the rest should be returned to Petitioner. (Pruess II, Doc. No. 164).

On October 6, 2004, the Government filed a Motion pursuant to Fed. R.Crim. P. 35 to reduce Petitioner's total term from 116 to 80 months imprisonment based upon his substantial assistance to the Government. (Pruess II, Doc. No. 152). On October 8, 2004, the Court granted the Motion, making Petitioner immediately eligible for release from custody (<u>Id.</u>, Doc. No. 153). On October 13, 2004, Petitioner's custodial sentences were completed in Pruess I through III and he was released from custody[7] (<u>Id.</u>, Doc.

---

[7] On October 29, 2008, Petitioner again was arrested and charged with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g). (Case No. 5:08cr54, Doc. No. 3). (Pruess IV). Petitioner subsequently entered into a written Plea Agreement with the Government (<u>Id.</u>, Doc. No. 24), and by judgment dated November 9, 2009, was sentenced to 21 months imprisonment.

No. 154).

After the completion of his supervised release terms on prior cases, on December 18, 2006 Petitioner brought the instant Coram Nobis Petition (Case No. 5:06cv159, Doc. No. 1, "Pruess civil case"), primarily on the basis of certain portions of Agent Campbell's testimony in connection with the Motions for Return of Property. Specifically, Petitioner, through his counsel, here argues that Agent Campbell's 2004 testimony establishes that he actually is innocent of his original conviction in Pruess I. (Id., Doc. No. 1 at 3). That is, counsel asserts that Petitioner "pled guilty based upon acts which, it was later learned, did not violate the statute under which he was being prosecuted, specifically because the devices he possessed were not 'destructive devices.'" (Id. at 12). Therefore, counsel argues that the Court lacked jurisdiction to accept Petitioner's guilty plea to the subject charge, and that the conviction was void ab initio. (Id. at 9-12). The relevant portion of Agent Campbell's 2004 testimony upon which Petitioner relies states:

> You can possess a 40 millimeter cartridge
> that is a destructive device or has an

---

This sentence has been served and Petitioner has been placed on supervised release status. He is not in custody. (Id., Doc. No. 41). That conviction was vacated on direct appeal. United States v. Pruess, 416 F. App'x 274, 275 (4th Cir. March 14, 2011) (unpublished). It has now been remanded to the district court for re-sentencing, currently scheduled for September, 2011. Additional time in custody for Petitioner is not in issue in Pruess IV.

> antipersonnel effect without the means to
> launch it and it is not a destructive device.
> When you possess both, then you do possess a
> destructive device. By holding a 40
> millimeter cartridge, whether it be a flare
> or a smoke, that doesn't necessarily mean
> that it is a destructive device. A flare
> would be an explosive, not a destructive
> device.
>
>                    . . . .
>
> A flare, 40 millimeter flare is an explosive
> . . . [A 40 millimeter high explosive car-
> tridge is] an explosive device by itself. In
> conjunction with a 40 millimeter launcher, it
> is a destructive device.

(<u>Id.</u> at 12-13, n. 5).

On February 17, 2007, the Government responded to the Peti-

tion. (Doc. No. 3). First, the Government's Response questions

whether <u>coram nobis</u> relief is even available. (<u>Id.</u> at 4). The

Government contends that the All Writs act largely was replaced

by various federal rules of procedure which are more appropriate

for post-conviction challenges like the instant one. (<u>Id.</u>).

The Response also argues, contrary to Petitioner's position,

that Agent Campbell never testified about a 60 mm mortar round.

(Doc. No. 3 at 3-4, 6). Rather, the Government asserts that

Agent Campbell, while intending to limit his testimony to the

devices covered by BATF Ruling 95-3,[8] mistakenly testified that

---

[8] BATF Ruling 95-3 provides that when a 37/38 mm gas/flare gun is pos-
sessed in conjunction with "anti-personnel" type ammunition consisting of wood
or rubber pellets, balls, or bean bag cartridges, it becomes "an instrument of
offensive or defensive combat," is capable of use as a weapon, and therefore

9

40 mm cartridges are not destructive devices unless accompanied by the hardware to launch them. (Id. at 3). Therefore, the Government contends that inasmuch as Agent Campbell's testimony is silent concerning 60 mm mortar rounds, it is irrelevant and does not support Petitioner's claim of actual innocence. (Id.).

Last, the Government contends that even in the absence of a launching device a 60 mm mortar round, "by its mechanical design and chemical composition, ha[s] the potential to detonate (or explode) and produce fragmentation." (Id. at 5). Therefore, such mortar round is a "destructive device," per se, as it meets the definition of an explosive under 26 U.S.C. § 5845(f) and certain pertinent case law.[9]  (Id. at 5-6).

On February 14, 2007, Petitioner filed a Reply raising several arguments, including two that he renewed from his § 2241 Petition -- specifically that the Indictment was defective because it failed to specifically track the statutory language and that the statute under which he was convicted is void for vagueness. (Doc. No. 5; and 5:99cv79, Doc. No. 1 at 8-11). The Reply further questions the claim that Agent Campbell's testimony was partly erroneous inasmuch as Campbell reportedly was emphatic and

must be classified as a destructive device as defined by the National Firearms Act.  (5:06cv159, Doc. No. 7-1 at 1-2).

[9] See, e.g., United States v. Thomas, 111 F.3d 426 (6th Cir. 1997) (holding that shotgun shells are destructive devices due to explosive properties.).

precise in his testimony, and the Government could have sooner sought to correct any errors had it believed it to be erroneous. (Id. at 4-6). Petitioner's counsel does concede that Agent Campbell did not mention 60 mm mortar rounds in his testimony, but still contends that his testimony about 40 mm cartridges establishes that 60 mm mortar rounds are not destructive devices. (Id. at 5). Notably, Petitioner does not contend that the 60 mm mortar round was a "dummy," that is, without explosive content.

On February 21, 2007, the Government filed a "Final Response," reiterating that 60 mm mortar rounds fall squarely within the National Firearms Act's definition of materials which, by their "mechanical design and chemical composition, had the potential to detonate (or explode) and produce fragmentation." (Doc. No. 7 at 1-2). The Government also contends that BATF Ruling 95-3 does not support Petitioner's claim of actual innocence. (Id. at 2-3). Likewise, the Government argues that Agent Campbell's testimony does not possess the talismanic significance that Petitioner believes it to have, chiefly because it did not give an opinion on, or otherwise address, the question of whether 60 mm mortar rounds are destructive devices under the law. (Id. at 3-4). Moreover, the Reply contends that Petitioner's arguments challenging the indictment and the statute are subject to dismissal as legally baseless, procedurally barred or procedurally

defaulted. (Id. at 4-5).

Finally, on March 18, 2007, Petitioner filed a Reply (Doc. No. 10). Such Reply, in relevant part, challenges the Government's argument that the 60 mm mortar round falls within the "similar devices" clause of 26 U.S.C. § 5845(f). (Id. at 1-2). On the contrary, counsel argues that the 60 mm mortar round falls under the statute's exclusion because it is "neither designed nor redesigned for use as a weapon." (Id.).[10]

Petitioner's counsel also seems to argue that given the procedural history of this case and the fact that there is no ambiguity in Agent Campbell's testimony, such testimony either must be seen as fully supporting Petitioner's argument that the statute is void for vagueness, or as unbelievable in its entirety and, therefore, insufficient to support the forfeiture of Petitioner's property. (Id. at 3). Ultimately, counsel asserts that if the testimony is believable, then a logical extension of that testimony supports a conclusion that a 60 mm mortar round, standing alone, is not a destructive device. (Id.).

After having carefully considered the foregoing materials, along with the relevant precedent, the Court is persuaded that Petitioner is not entitled to the relief sought.

---

[10] It may be taken as a given that a mortar round is normally delivered in combat operations by way of a launching tube.

## II.  __ANALYSIS__

### A.  __Petition for Writ of Error Coram Nobis__

A writ of error coram nobis is "an extraordinary tool to correct a legal or factual error, an application for the writ is properly viewed as a belated extension of the original proceeding during which the error allegedly transpired."  United States v. Denedo, 129 S.Ct. 2213, __, 173 L.Ed.2d 1235 (2009); Kurtz v. Moffitt, 115 U.S. 487 (1885).  Such writ most typically is used to attack a judgment that was infirm at the time it issued for reasons that later came to light.  United States v. Morgan, 346 U.S. 502, 516 (1954) (requiring an "error[] of fact unknown to the court at the time of the judgment, without fault of the defendant, which, if known would probably have prevented the judgment"); United States v. Mayer, 235 U.S. 55, 68 (1914) ("These writs were available to bring before the court that pronounced the judgment errors in matters of fact which had not been put in issue or passed upon, and were material to the validity and regularity of the legal proceeding itself . . . ."); Hanan v. United States, 402 F.Supp.2d 676, 683 (E.D. Va. 2005) ("federal courts may properly fill the interstices of the federal post-conviction remedial framework through remedies available at common law, including, inter alia, writs of coram nobis . . . .").

Importantly, a court reviewing a petition for a writ of error coram nobis must presume that the underlying proceedings were correct, and the burden of showing otherwise rests squarely on the petitioner. Id. at 684. This burden has been described as "substantial," exceeding that of an ordinary habeas petitioner. (Id.). This heavier burden is justified in coram nobis proceedings because where, as here, a petitioner has completed his sentence, the Government is unlikely to allocate scarce prosecutorial resources to retry a defendant who will not be resentenced in any event. (Id. at 684-85); Morgan 346 U.S. at 512-13 (noting that coram nobis relief is only available when the petitioner has served his sentence and is no longer in custody). Thus, unlike a typical habeas proceeding, society's interest in preserving a valid conviction is greatly diminished, as there is no sentence to be completed. Hanan, 402 F.Supp.2d at 685; see also U.S. v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968) (discussing prosecution's diminished interest in coram nobis proceeding as compared with traditional habeas proceeding).

Courts properly have recognized that, were coram nobis relief granted with any regularity, courts would be overrun with endless re-litigation of criminal convictions. Hanan, supra, 402 F.Supp.2d at 685. Accordingly, successful coram nobis petitions are exceedingly rare, and generally involve fundamental defects,

14

such as the deprivation of counsel in <u>Morgan</u>, 346 U.S. at 506

(1954), or coerced guilty pleas as in <u>Keogh</u>, 391 F.2d at 148.  In

other words:

> because a writ of error is essentially a
> remedy of last resort for petitioners who are
> no longer in custody pursuant to a criminal
> conviction . . . [and c]ourts may consider
> <u>coram nobis</u> petitions only where no other
> remedy is available and the petitioner
> presents sound reasons for failing to seek
> relief earlier[,] . . . it is difficult to
> conceive of a situation in a federal criminal
> case today where a writ of <u>coram nobis</u> would
> be necessary or appropriate.

<u>Belcher v. United States</u>, 2009 WL 2599331 *5 (S.D. W.Va. Aug. 20,

2009) (internal quotations omitted; <u>quoting</u> <u>Carlisle v. United</u>

<u>States</u>, 517 U.S. 416, 429 (1996)).

The Fourth Circuit has explained that to obtain <u>coram nobis</u>

relief, a petitioner must show (1) that his conviction or sen-

tence involved an error of the most fundamental character; (2)

that it is probable that a different result would have occurred

if not for the error; (3) that adverse consequences continue to

flow from the conviction such that a case or controversy exists

within the meaning of Article III; (4) that a more usual remedy

is not presently available to correct the error; and (5) that

sound reasons exist for not challenging the error earlier, such

as by direct appeal or § 2255 motion.  <u>Mandel</u>, 862 F.2d at 1075.

As to the second requirement, the Court notes that in <u>Scates</u>

v. United States, 914 F.2d 249 (4th Cir 1990) (Table), the Fourth Circuit, relying upon a Ninth Circuit case,[11] found it unnecessary to establish that the error made a difference because coram nobis only addresses errors of the most fundamental character under the first requirement.  Thus, if Petitioner can satisfy the first element by demonstrating that his conviction involved an error of the most fundamental character he will, ipso facto, satisfy the second element under Mandel.

As to the third requirement, it is readily apparent that as a convicted felon, Petitioner has lost certain civil rights, including his right legally to possess firearms.  Therefore, Petitioner can satisfy the third element of the above-listed test.  See Pledger v. United States, 272 F.2d 69, 70 (4th Cir. 1959) (per curiam)(noting that loss of civil rights meets the Article III requirement for a controversy).

Similarly, as to the fourth requirement, because Petitioner was out of custody at the time he filed this Petition, he can establish that a more usual remedy was not then available to challenge the alleged error at the time he filed this Petition. Mandel, supra, 852 F.2d at 1068.

Thus, the critical questions that must now be answered are:

---

[11] Hirabayashi v. United States, 828 F.2d 591 (9th Cir. 1987).

16

(1) whether Petitioner can establish sound reasons for his fail-
ure to raise this challenge on direct appeal or in a timely filed
motion to vacate, thereby rendering this Petition properly before
the Court; and (2) if properly before the Court, whether the
Petition sufficiently establishes that a fundamental error occur-
red so as to entitle Petitioner to relief from his conviction
under Pruess I.  See Belcher, 2009 WL 2599331 at *5 (explaining
that the Court need not determine if an error occurred in the
absence of showing that petition is timely brought).

### 1. **Petitioner has failed to establish that he could not have sooner brought this claim**.

As to this requirement, Petitioner must establish that his
claims "could not have been raised by direct appeal, or the
grounds to attack the conviction bec[a]me known after the com-
pleted sentence when § 2255 relief is unavailable." Id. (quoting
Sun v. United States 342 F. Supp. 2d 1120, 1126 (N.D. Ga. 2004).
If, on the other hand, Petitioner knew or could have known about
all of the circumstances which underlie his request for coram
nobis relief, he will not be able to establish that the claims
properly are before the Court.  See Foont v. United States, 93
F.3d 76 (2d Cir. 1996) (barring coram nobis relief for unexcused
four-year delay); Etlin v. Unknown, 2009 WL 3762304 *6 (E.D. Va.
Nov. 9, 2009) (unpublished) (noting, in addition to other

deficiencies, <u>coram nobis</u> relief was improper due to 12-year delay).

Because the Court finds that the foundational premise of Petitioner's claim of actual innocence was available long before 2006 when he filed the instant Petition, Petitioner cannot show that his Petition properly is before the Court.

### a. <u>Petitioner was aware of the basis for his claim of actual innocence before 2006</u>.

First, as to the availability of such information, the record shows that during his arraignment, Petitioner was advised that he was being charged with the unlawful transfer of the 60 mm mortar round, and he was informed of the statute under which he was being prosecuted. At some point during the prosecution, but certainly no later than the time when he appeared at his Plea and Rule 11 Hearing, Petitioner also was advised of the elements of his offense and of the facts the Government would have had to prove in order to convict him of the charge. Thus, Petitioner had no shortage of information from which he timely could have articulated his claim that he actually is innocent of violating 26 U.S.C. § 5861(e) because a 60 mm mortar round does not meet the test of a "destructive device" as that term is defined by the statute. In fact, as the record shows, Petitioner did raise this actual innocence claim, albeit, in his 1999 Petition under §

18

2241.  (Case No. 5:99cv79, Doc. Nos. 1 and 2).  Thus, the Court

properly rejected that claim based, in part, on its conclusion

that Petitioner could and should have raised it in a timely filed

motion to vacate.[12]

### b. <u>Petitioner does not explain his delay</u>.

Second, even if Petitioner's claim of actual innocence is

true, he still has failed to explain why he could not have raised

this allegation in a timely filed appeal or motion to vacate.

Granting that Petitioner's Plea Agreement greatly limited his

right to post-conviction review,[13] such limitations may not have

precluded his bringing a post-conviction challenge to his convic-

tion on the basis of a claim of actual innocence.  Indeed, in

<u>United States v. Johnson</u>, 410 F.3d 137 (4th Cir. 2005), the

Fourth Circuit stated that "even a knowing and voluntary waiver

of the right to appeal cannot bar the defendant from obtaining

appellate review of certain claims . . . ," and that "appellate

---

[12] See <u>In re Vial</u>, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc) (noting that a § 2241 petition is only proper when the remedy provided under § 2255 is inadequate or ineffective to test the detention; and that § 2255 is not rendered inadequate or ineffective merely because the petitioner was unable to obtain relief under § 2255, or because he is procedurally barred from bringing such a motion.).

[13] The waiver clause in Petitioner's Plea Agreement in Pruess I states, in part, that he waived his "right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceeding under 28 U.S.C. § 2255.  This waiver does not apply to claims of ineffective assistance of counsel or prosecutorial misconduct."  (Pruess I, Doc. No. 18, at ¶ 12).

courts 'refuse to enforce an otherwise valid waiver if to do so
would result in a miscarriage of justice.'" Id. at 151(quoting
United States v. Andis, 333 F.3d 886, 891 (8th Cir. 2003). See
United States v. Aparicio, 2010 WL 4156472, at * 6 (W.D. Va. Oct.
21, 2010) (unpublished) ("Fourth Circuit precedent counsels
against finding that []a claim [that the movant is a 'victim []
of a fundamental miscarriage of justice'] is foreclosed by his
collateral attack waiver."); and Hunt v. McDade, 205 F.3d 1333,
at *2 (4th Cir. 2000) (Table) (noting various procedural barriers
to claim of actual innocence but "granting [the petitioner] all
necessary analytical assumptions to overcome . . ." such barriers
in order to address but, ultimately, reject the merits of such
claim).  See also United States v. Phipps, 2011 WL 1252573 (4th
Cir. April 5, 2011) (Table) (a waiver in a plea agreement does
not preclude the appellate court's "review of any errors in [the
petitioner's] conviction that may be revealed by [the court's ]
review pursuant to Anders[v. California, 386 U.S. 738 (1967)]").

    As such, it is far from clear that, notwithstanding his
waiver, Petitioner could not have raised his claim of actual
innocence in a timely filed appeal or motion to vacate.  Yet,
despite the numerous opportunities that Petitioner has had to do
so, he has not used one of his filings in this case to explain
why he failed to file a direct appeal and/or to raise his actual

innocence claim in a motion to vacate.  Such failure is all the more revealing given, as the Court has determined, that Petitioner had all of the information he needed to formulate this claim at the time of his prosecution.  Therefore, in the absence of an explanation for his timeliness failures, it would be quite difficult for the Court to find that this claim could not have timely been brought before the Court.

### c. **The cases cited by Petitioner do not dictate a different result**.

Furthermore, the two cases upon which Petitioner relies in support of his actual innocence claim both were decided prior to his prosecution in Pruess I.  See United States v. Hamrick, 995 F.2d 1267, 1271 (4th Cir. 1993) (reversing convictions under 26 U.S.C. §§ 5861(d) through (f) and 18 U.S.C. § 924(c) because defendant "did not have all of the necessary parts in order for the dysfunctional bomb to qualify as a destructive device."); and United States v. Blackburn, 940 F.2d 107, 110 (4th Cir. 1991) (holding, in part, that to be punished for conduct under U.S. Sentencing Guidelines § 2K2.2(b) – now consolidated with § 2K2.1 – defendant must possess every essential part necessary to construct destructive devices).  Consequently, even in the absence of Agent Campbell's 2004 testimony, the facts and legal precedent underlying Petitioner's claim of actual innocence all

were available to him as early as the time that he was prosecu-
ted. In sum, Petitioner cannot establish sound reasons for not
timely bringing this claim on appeal or in a motion to vacate;
therefore, he cannot establish that this Petition is properly
before the Court for <u>coram nobis</u> review. <u>Egan v. United States</u>,
2009 WL 1220540, at * 2 (W.D. Va. April 30, 2009) (declining
relief under <u>coram nobis</u> petition to petitioner who failed to
establish that he could not have brought claims in § 2254
petition).

> **2.** **Petitioner cannot establish an entitlement**
> **to relief on the basis of Agent Campbell's**
> **2004 testimony**.

Even assuming Petitioner could establish that his case
properly is before the Court, he still would not be entitled to
any relief on this record. Notwithstanding Petitioner's strong
beliefs to the contrary, Agent Campbell's 2004 testimony simply
does not provide a basis for vacating his conviction.

> **1.** **Agent Campbell's testimony has virtually**
> **no precedential value to Petitioner's claim**.

First, Petitioner has not pointed the Court to any authori-
ty in support of the proposition that a special agent's testimony
about a legal matter is the legal equivalent of a statute or case
precedent concerning that matter. In other words, assuming its
relevance, the Court would have to accord Agent Campbell's testi-

mony the weight it gives to statutes passed by Congress or deci-
sions rendered by federal courts in order for it to provide an
adequate basis for reversing Petitioner's conviction.  Suffice it
to say, the subject testimony has no such authority.  Moreover,
the matter about which Agent Campbell testified -- BATF Ruling
95-3 -- was issued in 1995.  Therefore, to the extent that the
testimony is helpful to Petitioner at all, it provides further
proof that he could have relied upon its foundational basis to
bring this claim in a timely manner.

Second, even if Petitioner successfully had cleared all of
the other hurdles presented in this case, he simply would not be
able to circumvent the fact that Agent Campbell's testimony did
not mention the 60 mm mortar round at issue here.  Therefore, the
Agent's testimony is not directly relevant to Petitioner's claim.
Because the Agent was not making a comparison, obviously his
testimony did not explicitly say that 60 mm and 40 mm rounds,
respectively, are analogous for purposes of qualification as
explosive or destructive devices.

Moreover, under the circumstances of this case – where the
object in question, the 60 mm mortar round, comes within the
plain language of the statute, Petitioner must be expected to
carry his burden by establishing that a deviational definition is
well founded in the law.  It is readily apparent that a mortar

round, within the wording of Section 5845, is a device at least
similar to "any" bomb or grenade, or to "any" rocket or missile
or mine, the common required characteristic being that it be
"explosive."  The section does provide that a device in the
nature of a rocket must have "a propellant charge of more than
four ounces" and one in the nature of a missile must have "an
explosive or incendiary charge of more than one quarter ounce"
but otherwise the devices named and "similar" devices are not
given further definitional limitations, such as manner of fusing,
triggering and, notably, launching.  Petitioner has not carried
this burden.

### 2.  <u>Petitioner's other arguments also fail</u>

In addition to the foregoing, Petitioner has raised several
other arguments, none of which advance his cause.  Indeed,
Petitioner also argues that: (1) the Pruess I Indictment was
defective for failing fully to track the statutory language; (2)
the statute is void for vagueness and the Rule of Lenity should
be applied here; (3) the Government's description of the 60 mm
mortar round as a "high explosive" in Pruess II is a belated
admission that it is not a destructive device; and (4) because
the firearms license which he formerly held distinguishes between
firearms and the ammunition for them, that fact shows that the
Government never intended for a 60 mm mortar round to qualify as

a firearm.  Like his claim of actual innocence, however, all of these arguments also could have been timely raised long before now.  Therefore, Petitioner is not entitled to any relief under them.  See Mandel, supra, 862 F.2d at 1068; Egan, supra, 2009 WL 1220540, at * 2.

### III.  CONCLUSION

Petitioner has failed to meet his burden of establishing that his coram nobis Petition properly is before the Court because he had sound reasons for not timely raising his claims by either a direct appeal or a timely filed § 2255 motion. Equally critically, Petitioner has failed to demonstrate that his conviction involved an error of the most fundamental character. Ultimately, therefore, Petitioner's Coram Nobis Petition must be dismissed.

### IV.  ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED that** Petitioner's Petition for a Writ of Error coram Nobis (Doc. No. 1) is **DISMISSED.**

**SO ORDERED.**

Signed: August 8, 2011

Richard L. Voorhees
United States District Judge